IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| LEONARD MATHEWS, | ) | |
| | ) | |
| Petitioner, | ) | Civil Action No. 7:21cv00609 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| WARDEN, | ) | By:  Hon. Thomas T. Cullen |
| | ) |       United States District Judge |
| Respondent. | ) | |

Leonard Mathews, a federal inmate proceeding *pro se*, filed a petition for writ of habeas corpus pursuant 28 U.S.C. § 2241, while housed at the United States Penitentiary ("USP") in Lee County, Virginia.[1] Mathews is challenging a disciplinary conviction that resulted in, *inter alia*, the loss of good-conduct time ("GCT"). Respondent filed a motion to dismiss or, in the alternative, for summary judgment and this matter is ripe for disposition.[2] For the following reasons, the court will grant respondent's motion.

I.

On November 6, 2019, during a search of Mathews' cell, an officer discovered an "unknown package inside a used deodorant bottle." (Incident Rep. [ECF No. 15-3 at 1].) The deodorant bottle was "in an unsecured locker identified as inmate Mathews' by legal mail." (*Id.*) The "package" was "hidden inside and underneath the deodorant cap" and was "wrapped

---

[1] Mathews was housed at the USP in Allenwood, Pennsylvania, at the time of his disciplinary conviction, but a § 2241 petition is properly brought in the jurisdiction where the inmate is currently housed. *See In re Jones*, 226 F.3d 328, 332 (4th Cir. 2000) (stating that the proper venue for a § 2241 petition is the district in which the petitioner is incarcerated).

[2] Respondent and the court rely on a declaration attached to respondent's motion and, therefore, the court will treat respondent's motion as one for summary judgment.

in a clear bag, black paper, and black electrical tape." (*Id.*) Inside the package was a "small . . . black electronic device with red lettering 'SanDisk' on the outer shell," and "[i]nside the shell was a USB thumb drive with an engraving '32 GB.'"[3] (*Id.*)

That same day, Mathews was charged with a disciplinary offense for Possessing a Hazardous Tool in violation of Bureau of Prisons ("BOP") Prohibited Act Code ("Code") 108.[4] Mathews received a copy of the incident report that day and was advised of his rights.[5] Mathews confirmed that he understood his rights and admitted that the USB "memory drive" was his.[6] (*Id.* at 3.)

On November 7, 2019, the BOP held a Unit Discipline Committee ("UDC") hearing and referred the incident report to the disciplinary hearing officer ("DHO") for a hearing.[7]

---

[3] A thumb drive is "a small usually rectangular device used for storing and transferring computer data." *See* Merriam-Webster, Thumb Drive, https://www.merriam-webster.com/dictionary/thumb%20drive (last visited Sept. 23, 2022).

[4] Code 108 prohibits "[p]ossession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g., hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." 28 C.F.R. § 541.3 (ECF No. 15-7 at 45.)

[5] As required by 28 C.F.R. § 541.5(b), an investigating officer informs the inmate of the charge(s) and asks for the inmate's statement concerning the incident. The officer also advises the inmate of his right to remain silent, and that although his silence may be used to draw an adverse inference against him, his silence alone may not be used to support a finding that he committed a prohibited act.

[6] The terms "USB thumb drive," "memory drive," and "thumb drive" are used throughout the opinion to refer to the same device.

[7] Generally, within five working days of an incident report being issued, a UDC reviews the incident report. 28 C.F.R. § 541.7(c). The inmate is permitted to appear in person or electronically at the UDC hearing, except during deliberations or when institutional security would be jeopardized by the inmate's presence. *Id.* § 541.7(d). The inmate is entitled to make a statement and to present documentary evidence on his own behalf at the UDC hearing. *Id.* § 541.7(e). After considering all the evidence presented at the hearing, the UDC makes a decision based on at least some facts, and if there is conflicting evidence, based on the greater weight of the evidence. *Id.*

The UDC makes one of the following findings: (1) the inmate committed the prohibited act as charged and/or a similar prohibited act if reflected in the incident report, (2) the inmate did not commit the prohibited

After the UDC hearing, Mathews was given notice of his DHO hearing and advised of his rights at the hearing.[8] (ECF Nos. 15-4 & 15-5.) Mathews elected to proceed to the hearing without a staff representative and without witnesses. (ECF No. 15-5.)

The BOP held a DHO hearing on November 18, 2019. At the hearing, Mathews acknowledged that he understood his rights and stated: "It's mine; I smuggled it in here hidden in my deodorant," and that the incident report was "true." (Disciplinary Hr'g Officer Rep. [ECF No. 15-6 at 1, 3].) In addition to the reporting officer's statement in the incident report and Mathews' statements, the DHO also reviewed a photograph of the "electronic thumb[] drive as described in the report." (*Id.* at 2.) The DHO noted that he "believed the information provided by the staff member involved in the case, as they derived no known benefit by providing false information." (*Id.*) After consideration of the evidence presented at the hearing, the DHO determined that the facts supported a finding that Mathews had "committed the prohibited act[] of Possession of a Hazardous Tool, Code[] 108." (*Id.* at 3.) The DHO sanctioned Mathews with loss of visitation and telephone privileges for one year and disallowance of 41 days of GCT. In explaining the reason for the sanction, the DHO noted that "possession of a USB thumb drive threatened the orderly running of the correctional facility. For inmates to retain items of this type, not known to be provided to them through

---

act charged, or (3) the case is referred to the DHO for further proceedings. *Id.* § 541.7(a)(1)−(3). When an inmate is charged with a "greatest" or "high" severity prohibited act, the UDC will automatically refer the incident report to the DHO for further review. *Id.* § 541.7(a)(4). A violation of Code 108 is a "greatest" severity level prohibited act. *Id.* § 541.3.

[8] If charges are referred to the DHO, the UDC advises the inmate of the rights afforded at the DHO hearing. 28 C.F.R. §§ 541.7(g), 541.8. An inmate may request a staff representative and have witnesses at the DHO hearing. *Id.* If the inmate requests one, a staff representative will be available to assist the inmate and help the inmate understand the charges and potential consequences. The staff representative may also assist the inmate by speaking with and scheduling witnesses, obtaining written statements, and otherwise helping the inmate prepare evidence for presentation at the DHO hearing. *Id.*

institutional channels, indicates defiance and refusal to follow established and known policy." (*Id.*) The DHO also found that the conduct warranted the disallowance of GCT "based on the offense being [] a highly aggravated offense which greatly jeopardizes the safety of staff and inmates." (*Id.*) On November 25, 2019, the DHO delivered the DHO report to Matthews and advised him of his right to appeal. Mathews appealed and both the Acting Regional Director, but the National Inmate Appeals Administrator denied the appeals. (Admin. Remedy Resp's. [ECF No. 2-1, 2−4 & 8−10].)

Mathews filed this action challenging his disciplinary conviction and sanction. Although he does not deny that he possessed the thumb drive (and even admits to having "smuggled" it in his deodorant container), he asserts that a thumb drive is not a "hazardous tool" under Code 108. Mathews argues that, even though the definition of "hazardous tool" includes "electronic devices," a thumb drive is not prohibited because it is not "electronic." Mathews also argues that inmates may possess legal materials on authorized thumb drives, though he does not assert that the thumb drive in question was authorized or that it contained legal materials. Mathews seeks return of his 41 days of lost GCT.

In his motion for summary judgment, respondent argues that there is some evidence to support Mathews' disciplinary conviction and resulting loss of GCT and that his petition is meritless. In a declaration submitted in support of the respondent's motion, Destiny Spearen, a paralegal for the BOP, avers that an "unauthorized thumb drive is a threat to the security, orderly running, and safety of the institution and is considered a hazardous tool and electronic device in violation of [] Code 108." (Decl. of Destiny Spearen at ¶ 7 [ECF No. 15-1].) She also attests that:

> An unauthorized thumb drive is capable of containing documents relating to escape plans and planned acts of violence, may contain a computer virus that, if plugged into a government computer could cripple the BOP's computer system, and could contain sensitive documents and information concerning cooperators, gang members, and even names and information of inmates in witness protection who may be confined in a facility, as well as other threats to the safety and security of the institution.

(*Id.* at ¶ 8.) There is no evidence regarding what was actually on Mathews's thumb drive.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249−50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874−75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof

that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

## III.

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). When the punishment does not cause the original sentence to be enhanced, protected interests will generally be limited to freedom from restraint that imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

While prisoners are afforded rights of due process, they are necessarily balanced with the interests of institutional security. *Wolff v. McDonnell*, 418 U.S. 539 (1974). "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. To provide constitutionally sufficient procedural due process, a disciplinary proceeding must provide the following: (1) advance written notice of a claimed violation at least 24 hours before any disciplinary hearing; (2) the ability of the prisoner to call witnesses and present documentary

evidence at the disciplinary hearing; (3) a written statement of the evidence relied upon by the factfinder and the reasons for the disciplinary action taken. *See Dilworth v. Adams*, 841 F.3d 246, 253 (4th Cir. 2016) (citing *Wolff*, 418 U.S. at 563-66). To provide constitutionally sufficient substantive due process, a disciplinary offense finding must be "supported by some evidence in the record." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). In *Hill*, the Court explained that the only "relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455−56. In applying this deferential approach, courts need not engage in a second "examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455.

Here, Mathews does not dispute that he received adequate procedural due process and it is clear from the record that there was "some evidence" supporting Mathews' disciplinary conviction and resulting loss of GCT. Not only did Mathews admit to possessing the thumb drive, but he also admitted to concealing it in his deodorant container.

Code 108 prohibits the "possession, manufacture, introduction, or loss of a hazardous tool (tools most likely to be used in an escape or escape attempt or to serve as weapons capable of doing serious bodily harm to others; or those hazardous to institutional security or personal safety; e.g. hack-saw blade, body armor, maps, handmade rope, or other escape paraphernalia, portable telephone, pager, or other electronic device)." *See* 28 C.F.R. § 541.3. Mathews argues that a thumb drive is not an "electronic device" under Code 108 and, thus, does not meet the definition of a "hazardous tool." Advancing this argument, he submits that without evidence of a "hazardous tool," there was not "some evidence" to support his disciplinary conviction.

But other courts have long held that the prohibition against possessing "hazardous tools" includes devices such as thumb drives, MP3 players, iPods, and device chargers. *See e.g., Friedman v. Hemingway*, No. 21-10185, 2022 U.S. Dist. LEXIS 80964, at *8 (S.D. Mich. May 4, 2022) (battery pack and accompanying cord); *Fernandez v. Spaulding*, No. 18-10732, 2019 U.S. Dist. LEXIS 73193, at *6 (D. Mass. Apr. 30, 2019) (MP3 player with memory card); *Bello v. Saad*, No. 2:18cv59, 2019 U.S. Dist. LEXIS 43948, at *14 (N.D. W.Va. Feb. 19, 2019) (unauthorized 32 GB USB drive concealed within a radio); *Angel v. Dep't of Justice*, No. 15-7514(RMB), 2016 U.S. Dist. LEXIS 83436, at *9−10 (D.N.J. June 28, 2016) (MP3 player); *Evans v. Tamez*, No. C-11-317, 2012 U.S. Dist. LEXIS 81716, at *17 (S.D. Tex. Apr. 12, 2012) (upholding MP3 player as a hazardous tool and noting "a wide variety of non-weapon tools can be considered 'hazardous to institutional security,' including consumer electronic devices."); *Douglas v. Zickefoose*, No. 11-406(JBS), 2012 U.S. Dist. LEXIS 10674, at *42 (D.N.J. Jan. 27, 2012) (upholding the BOP's consideration of a cell phone charger as a hazardous tool, recognizing that "the BOP's inclusion of cell phones and related components as hazardous tools under Code 108 is simply an expanding interpretation of what constitutes a hazardous tool so that the BOP can effectively address the evolving ways inmates conduct and the introduction of contraband can threaten institutional security."); *Cordoba v. Shartle*, No. 4:09cv3015, 2010 U.S. Dist. LEXIS 63263, at *16 (N.D. Ohio June 23, 2010) (iPod); *Ausberry v. Grondolsky*, No. 08-4136(RMB), 2008 U.S. Dist. LEXIS 110521, at *13 (D.N.J. Sept. 9, 2008) (MP3 player).

In addition, one court determined that a thumb drive "is unquestionably an 'electronic device' under the code section, as some type of energy is required to read or write data

contained on the drive." *Wilson v. Langford*, No. CV 16-7971 CAS (MRW), 2016 U.S. Dist. LEXIS 183780, at *7 (C.D. Cal. Dec. 29, 2016). The court also determined that a thumb drive "[u]nquestionably" could be considered "a tool that could be 'used in an escape' or be 'hazardous to institutional security' as described in Code 108." *Id.* The court explained that "[t]he very nature of the [thumb drive] device is to store or transfer information in a manner not easily accessible except with another device (computer, tablet, etc.). That poses an obvious problem for prison officials to patrol." *Id.*

Further, several courts have referenced thumb drives as "electronic devices" in other circumstances. *See, e.g., U.S. v. Sanders*, No. 1:20cr143, 2022 U.S. Dist. LEXIS 149380, at *3 (E.D. Va. Aug. 19, 2022) (the "government seeks forfeiture of. . . nine electronic devices," including two thumb drives); *U.S. v. Feiling*, 453 F. Supp. 3d 832, 834 (E.D. Va. Apr. 10, 2020) ("Agents also obtained several electronic devices, including a sixteen-gigabyte thumb drive."); *U.S. v. Saboonchi*, 48 F. Supp. 3d 815, 816 (D. Md. Jul. 28, 2014) (stating that law enforcement officers "seized several electronic devices" including a "USB flash drive"); *U.S. v. Stein*, 819 F. App'x 666, 668 (10th Cir. 2020) ("Agents . . . seized, among other things, a computer and several thumb drives. While going through the contents of those electronic devices, agents came across images of child pornography."); *Tlapanco v. Elges*, 969 F.3d 638, 645 (6th Cir. Aug. 12, 2020) ("The officers seized a variety of electronic devices, including several iPods, a desktop computer, laptops, and several thumb drive storage devices."); *U.S. v. Pugh*, 945 F.3d 9, 15 (2d Cir. 2019) ("Pugh attempted to destroy, or succeeded in destroying, some of the electronic devices he was carrying with him, including a computer, multiple USB drives, and an iPod."); *U.S. v. Lee*, 701 F. App'x 147, 178 (3d Cir. 2017) ("Police Officers acquired warrants

to . . . seize Lee's electronic devices. They seized two cell phones, a laptop computer, a desktop computer, a portable hard drive, and a flash drive, all belonging to Lee."); *Waste Mgmt. of Wash. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015) ("The SanDisk thumb drive was a personal electronic device. . . ."); *U.S. v. Miller*, 534 F. App'x 204, 206 (4th Cir. 2013) ("[O]fficers found various electronic devices, including . . . several memory cards. . . .").

When explaining the reasons for Mathews's conviction and sanctions, the DHO noted that the possession of a thumb drive threatened the orderly running of the correctional facility and jeopardized the safety of staff and inmates. In addition, Ms. Spearen's declaration further explains that an unauthorized thumb drive is a threat to the security, orderly running, and safety of the institution. She also contends that a thumb drive is considered a hazardous tool and electronic device in violation of Code 108 because it is capable of containing documents relating to escape plans and planned acts of violence, may contain a computer virus that could cripple the BOP's computer system, and could contain sensitive documents and information concerning other inmates. Based on the foregoing, the court concludes that the DHO's determination that the unauthorized thumb drive is a "hazardous tool" was reasonable and that there is "some evidence" to support the DHO's determination that Mathews violated Code 108.[9]

---

[9] To the extent that Mathews may be arguing that Code 108 is unconstitutionally vague, his claim fails. A federal court may consider whether a prison regulation is unconstitutionally vague. A prison rule must provide "fair notice of what conduct is prohibited before a sanction can be imposed." *Newell v. Sauser*, 79 F.3d 115, 117 (9th Cir. 1996); *Hill v. Colorado*, 530 U.S. 703, 732 (2000) (holding that a law violates due process if it "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits"). "A statute or regulation must fail for vagueness if it forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning." *Robinson v. Warden*, 250 F. App'x 462, 464 (3d Cir. 2007) (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926)). A provision is also void for vagueness if it "authorizes or even encourages arbitrary and discriminatory enforcement." *Patel v. Zenk*, 447 F. App'x 337, 340 (3d Cir. 2011) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). However, "the law requires less in the way of notice" on inmates who are subject to prison rules, and "places a greater burden on the individual to

## IV.

Finding no genuine dispute of material fact and for the reasons stated, the court will grant respondent's motion.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 26th day of September, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

make inquiry or ask permission before acting" while in custody. *Meyers v. Alldredge*, 492 F.2d 296, 310-11 (3d Cir. 1974). "Because it is nearly impossible for prison authorities to anticipate, through a narrowly drawn regulation, every conceivable form of misconduct which threatens prison security, [the court] has reject[ed] the view that the degree of specificity required of [prison] regulations is as strict in every instance as that required of ordinary criminal sanctions." *Patel v. Zenk*, 447 F. App'x 337, 340 (3d Cir. 2011) (internal quotes omitted).

Other courts have previously found that Code 108 and its non-exclusive list of prohibited devices does not violate due process. *See, e.g.*, *Fernandez*, 2019 U.S. Dist. LEXIS 73193, at *5 ("[T]he absence of the term 'MP3 Player' from the text of Code 108 does not preclude the BOP from interpreting that provision to include it."); *Espinoza v. Fox*, No. CV 15-9775 JPR, 2016 U.S. Dist. LEXIS 101285, at *9 (C.D. Cal. Aug. 2, 2016) ("That Code 108 does not delineate every possible prohibited tool does not render it unconstitutionally vague."); *Angel*, 2016 U.S. Dist. LEXIS 83436, at *9−10 ("[Persons] of common intelligence and understanding would understand that possession of an MP3 player. . . may be sanctioned under Code 108 as a threat to institutional security."); *Ely v. McGrew*, No. CV 12-5266 JFW (OP), 2014 U.S. Dist. LEXIS 111632, at *11 (C.D. Cal. June 3, 2014) ("[C]ode 108 itself put prisoners on notice that possessing any tool that could be used in an escape or escape attempt, or that otherwise posed a threat to institutional security, would be subject to a sanction"). In this instance, the court concludes that persons of common intelligence would understand that an unauthorized thumb drive would constitute an "other electronic device," and that it could reasonably threaten institutional security. The DHO's decision was neither plainly erroneous nor inconsistent with the regulation. *See Bowles v. Sminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945) (holding that an agency's interpretation of its own regulation is controlling unless it is plainly erroneous or inconsistent with the regulation).